IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUZANNE FORREST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:23-cv-01373 |
| ) | |
| HCA MANAGEMENT SERVICES, LP, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE NEWBERN |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the Court Defendant HCA Management Services, LP's ("HCA Management") motion for summary judgment (Doc. No. 38), which is fully briefed. (*See* Doc. Nos. 41, 45). For the reasons discussed below, HCA Management's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Suzanne Forrest, a woman over the age of 60, filed this action against her former employer, HCA Management, claiming that it retaliated against her for engaging in protected conduct and discriminated against her because of her age and gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), the Age Discrimination in Employment Act ("ADEA"), and the Tennessee Human Rights Act ("THRA"). (*See* Doc. No. 1).

HCA Management hired Plaintiff in 2007 and consistently promoted her thereafter because of her work performance. (Pl. Dec. ¶ 4). It promoted her to Vice President of Case Management Compliance in October 2018, a role in which Plaintiff received high marks from her direct supervisors in her performance plans every year. (*Id*. ¶¶ 4-7).

---

[1] At this stage, the Court construes the factual record in the light most favorable to Plaintiff, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum is not a complete statement of the material facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motion.

Then, in March 2023, Jay St. Pierre ("St. Pierre") became Plaintiff's new direct supervisor. (*Id*. ¶ 8). Shortly thereafter, Plaintiff began to have concerns about how St. Pierre treated her and other female employees differently from their male peers and his comments to her and other older employees. (*Id*. ¶ 12). During group meetings with male and female employees, St. Pierre would undermine and/or dismiss her and other female employees' ideas only to later bring them up as his own but not treat her male coworkers the same way. (*Id*. ¶¶ 13, 14). Plaintiff witnessed St. Pierre undermine her female coworker Sharon Hiser's intelligence and dismiss her views or ideas on important topics. (*Id*.). Plaintiff also witnessed St. Pierre preclude her female coworkers from leading meetings and presentations, including one occasion when he stopped Claudia Stengal mid-presentation because he wanted a male, Jon Watson, to take over. (*Id*. ¶ 15). St. Pierre also only gave Plaintiff's male coworkers, like Jon Watson, opportunities to present in front of upper management. (*Id*. ¶ 16). Plaintiff's female coworkers shared her concerns about how St. Pierre treated them less favorably than their male coworkers. (*Id*. ¶ 17). Further, St. Pierre – who was younger than Plaintiff – constantly asked her about when she would be retiring and whether she was ready for retirement. (*Id*. ¶ 18). St. Pierre also made inappropriate comments about Plaintiff's older coworkers in conversation with her, including telling Plaintiff that Helen Zugni "was not up with the times" and needed to retire. (*Id*. ¶ 19).

On August 4, 2023, Plaintiff had a one-on-one meeting with St. Pierre during which she complained that he was treating her and the other female employees differently than their male coworkers, including the way in which he only undermined the ideas and opinions of herself and other female employees. (*Id*. ¶¶ 20-21). In the same meeting, Plaintiff complained to St. Pierre about him constantly asking her when she was going to retire and commenting about how other

older employees needed to retire. (*Id*. ¶ 22). During the meeting on August 4, 2023, St. Pierre did not provide any feedback to Plaintiff regarding her work performance. (*Id*. ¶ 23).

On September 5, 2023, Plaintiff had an in-person meeting with Jennifer Aleman, Vice President of Human Resources, during which she shared the concerns she had previously reported to St. Pierre regarding his less favorable treatment toward female employees in comparison to male employees and his inappropriate questions and comments he made to her and about other older employees. (*Id*. ¶ 28). At no point during this meeting did Aleman provide Plaintiff feedback on her work performance, her observations, or complaints made by other employees. (*Id*. ¶ 29).

In late July 2023, Plaintiff found a discrepancy regarding an account supported by a subordinate on her team, Amy Clark. (*Id*. ¶ 25). She brought the issue to the St. Pierre, and they had multiple conversations about ways to fix the problem and the best way to make sure Clark understood the significance of the issue. (*Id*. ¶¶ 25, 26). These discussions took place throughout the remainder of August through the first half of September 2023. (*Id*. ¶ 26). Ultimately, Plaintiff and St. Pierre agreed that verbal counseling was the best way to address the Clark matter. (*Id*. ¶ 27). At no point did St. Pierre or anyone else direct Plaintiff to issue a written performance improvement plan to Clark. (*Id*.). Following Clark's verbal counseling in late September 2023, neither St. Pierre nor Human Resources further mentioned the Clark situation to Plaintiff. (*Id*.).

On November 3, 2023, St. Pierre informed Plaintiff that her employment was being terminated due to a lack of confidence in her leadership. (*Id*. ¶ 30).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the

3

Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id*. The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

As noted above, Plaintiff brings claims against HCA Management for retaliation and gender and age discrimination under Title VII, the THRA, and the ADEA.[2] Because Plaintiff relies on circumstantial evidence to support her claims, the Court will determine whether summary judgment is appropriate by applying "the three-part burden-shifting framework developed by the

---

[2] "Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 n.2 (M.D. Tenn. 2020) (quoting *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)).

4

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

Under this familiar burden-shifting framework, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Id.* at 776. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id.* at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence. *See id.* at 256 (citing *McDonnell Douglas*, 411 U.S., at 804–805). Notably, "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case." *Wexler*, 317 F.3d at 574; *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (same for retaliation claims).

Here, HCA Management seeks summary judgment on all of Plaintiff's claims. For the reasons stated herein, HCA Management fails to show the absence of material disputes of fact or that it is entitled to judgment as a matter of law.

A. **Discrimination**

To establish a *prima facie* case of discrimination under Title VII/ADEA/THRA, a plaintiff must show she: (1) is a member of a protected group; (2) was subjected to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by someone outside of the

5

protected class or similarly situated non-protected employees were treated more favorably. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021). Here, there is no dispute that Plaintiff is a member of two protected groups or that she was subjected to an adverse employment action when HCA Management terminated her employment. Rather, HCA Management challenges Plaintiff's proof as to the third and fourth essential elements of her *prima facie* case.

HCA Management argues Plaintiff cannot satisfy the third element of her *prima facie* case of gender discrimination – that she was qualified for her position – because she was unprofessional and bad at her job, noting that her "deficient performance and lack of professionalism was the ultimate reason for her termination." (Doc. No. 38-1 at 14). However, the Court may not consider HCA Management's alleged nondiscriminatory reason for terminating Plaintiff's employment when analyzing the *prima facie* case. *See supra*. Accordingly, HCA Management has failed to show that Plaintiff lacks proof to satisfy the third element of her *prima facie* case of gender discrimination.

A plaintiff can satisfy the fourth element of their *prima facie* discrimination claim by demonstrating that they were replaced by someone outside of their protected class or that they were treated differently than similarly situated non-protected employees. A replacement with an age difference of seven or more years is sufficient to meet the fourth element of an age discrimination case. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336, 340 (6th Cir. 2003). Here, it is undisputed that HCA Management replaced Plaintiff with someone who was ten years younger. Accordingly, Plaintiff has sufficient evidence to satisfy the fourth element of her *prima facie* case of age discrimination.

As for her gender discrimination claim, HCA Management argues Plaintiff's evidence of similarly situated male employees being treated more favorably than her and other female

6

Case 3:23-cv-01373    Document 48    Filed 03/03/26    Page 6 of 11 PageID #: 502

employees is too conclusory to support her claim. (Doc. No. 38-1 at 12 (citing *Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. Appx. 252, 260 (6th Cir. 2001) ("Plaintiff makes only conclusory allegations that male executives enjoyed greater authority and autonomy than she or other women in the company.")).[3] This argument is unpersuasive because it is premised on a view of Plaintiff's evidence in the light most favorable to HCA Management, which the Court cannot do. Accordingly, HCA Management has failed to show Plaintiff lacks evidence of her *prima facie* case of gender or age discrimination.

Nevertheless, if HCA Management can "clearly set forth, through the introduction of admissible evidence," a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment, then the burden shifts back to Plaintiff to show that this legitimate, nondiscriminatory reason was pretext. *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the adverse action. *See id*. at 256 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)).

---

[3] Although HCA Management also cites to *Bruce v. Meharry Medical College*, 692 Fed. Appx. 275, 278 (6th Cir. 2017) in support of its foregoing argument, it relies on the court's analysis of evidence of disrespectful and dismissive comments during meetings in the context of the plaintiff's sexually hostile work environment claim. While the court in *Bruce* found the plaintiff lacked evidence that others outside the protected class were treated differently, it did not make that finding based on plaintiff's evidence of disrespectful and dismissive comments during meetings:

> Bruce argues that Meharry treated male doctors differently by allowing them to decline working at Antioch while she was forced to work there. However, Bruce never worked at Antioch, while a male doctor, who had previously expressed hesitation about working at Antioch, performed primary-care responsibilities there in 2016. In addition, the other male doctor who expressed hesitation at working at Antioch has not worked at Antioch, but Smoot considers him available to do so. The evidence simply does not support Bruce's assertion that male doctors were treated differently.

*Id*. Accordingly, *Bruce* does not support the proposition that Plaintiff lacks proof for her *prima facie* case of gender discrimination.

7

Case 3:23-cv-01373    Document 48    Filed 03/03/26    Page 7 of 11 PageID #: 503

According to HCA Management's briefing in support of its motion for summary judgment, its legitimate, nondiscriminatory reason for Plaintiff's termination was her "deficient performance and lack of professionalism." It points to the following deposition testimony from St. Pierre and Aleman (Vice President of HR) as its admissible evidence "clearly setting forth" those reasons:

> Q. So, like, my question is: at what point did you conclude that she did not have the willingness to move forward with reviewing the PIP with Ms. Clark?
>
> A. It was the combination of a period of time with a lack of follow-up with HR to have the discussion around the PIP itself and the lack of action from direct conversations with me. So it was – it was twofold over that – over that period of time.
>
> Coupled with everything else, it – I made the decision that it was time to move on. I needed – I needed a different leader in that role to continue to move and progress the organization forward in the manner that I – I was charged with as part of my overall responsibility for case management services.

(St. Pierre Deposition Testimony 110:10-24).

> Q. And what was discussed during that conversation?
>
> A. From what I recall, we discussed Jay's decision based on any lack of progress from Ms. Forrest that he did want to move forward with termination. He asked about the steps and procedure to do so, and I said that we would need to produce the separation agreement paperwork. And we discussed timing of – of having the meeting with Ms. Forrest.
>
> Q. Did he share with you, I guess, the thought and detail of the thought process behind why he wanted to move forward with the termination?
>
> A. From what I recall, he expressed again kind of, like I mentioned, just – there wasn't much progression after the feedback conversation he had with her. I believe in August was the timing of the conversation with her.
>
> He didn't see any of the strategic initiatives that he asked to be put forth in URS proceeding at the rate he asked for those

> to be executed. He had not heard any – any progress or any positive feedback around Mr. Forrest's conduct or behavior, any improvements of that nature.
>
> I do recall in that discussion I said I had not directly witnessed any of that behavior since my discussion with Ms. Forrest. I – I never followed up with her.
>
> I think there were only maybe two meetings that I had with her after she requested that I be that meeting buddy in – that I was present for, and I didn't have a need to follow up with her because I didn't see any observable concerns.
>
> So I did make sure Mr. St. Pierre was aware of that. However, he – he mentioned that he still saw some of the behaviors he was concerned about. He did mention that a couple of other leaders had still come to him with concerns.
>
> So he felt it was – it was time to move forward alongside the – with those multiple factors that we discussed. And alongside the inaction in addressing the Ms. Clark situation, he made the decision to move forward.

(Aleman Deposition Testimony 101:8-103:2).

The foregoing testimony does not clearly set forth HCA Management's reasons articulated in its briefing for Plaintiff's termination. But even if it did, Plaintiff correctly notes that there is conflicting evidence in the record as to what St. Pierre discussed with her in their August meeting, including whether he even directed her to deliver a PIP to Clark or informed her of any concerns about the level of her job performance. (*See* Doc. No. 41 at 9-16). The Court also notes that HCA Management's proffered reason for Plaintiff's termination in its briefing is different than the reason given to Plaintiff at the time of her termination. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("Shifting justifications over time calls the credibility of those justifications into question."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."). Accordingly, the Court finds there are material disputes of fact as to whether

9

HCA Management's proffered legitimate, nondiscriminatory reason for Plaintiff's termination are pretext for unlawful discrimination.

**B.     Retaliation**

To establish *a prima facie* case of retaliation under Title VII/ADEA/THRA, a plaintiff must show that (1) she engaged in protected activity; (2) the employer knew of the protected activity; and (3) the employer took an adverse employment action against her because of her protected activity. *Huang v. Ohio State Univ.*, 116 F.4th 541, 561 (6th Cir. 2024). "Complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices" is protected conduct under Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009).

HCA Management argues Plaintiff lacks evidence to support her *prima facie* case of retaliation because: (1) St. Pierre did not know about her protected activity; and (2) evidence of temporal proximity is insufficient to show causation because of her deficient job performance and lack of professionalism. (Doc. No. 38-1 at 17-24). However, there is conflicting testimony from St. Pierre and Plaintiff as to whether he knew of her protected activity – meaning this material fact is in genuine dispute.

And HCA Management urges the Court to find no evidence of casual connection by taking into account its alleged non-retaliatory reason for terminating Plaintiff's employment, which the Court cannot do when analyzing the *prima facie* case. *See supra*; *see also White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) ("Sixth Circuit case law warns against conflating the first (*prima facie* case) and second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell–Douglas* analysis."); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002) ("...the legitimate non-discriminatory reason offered by the employer at the

second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case."). The temporal proximity of less than three months between Plaintiff's protected activity and her termination is sufficient to meet her minimal burden of showing causation at the *prima facie* stage. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021).

As the Court has already determined there are disputes of material fact as to the issue of pretext, HCA Management has failed to show that summary judgment is appropriate on Plaintiff's retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, HCA Management's motion for summary judgment (Doc. No. 38) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE